UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL A. GRANICA,

                              Plaintiff,

        v.                                                **DECISION AND ORDER**
                                                         12-CV-417S
TOWN OF HAMBURG,

                              Defendant.

## I.  INTRODUCTION

In this action, Plaintiff Michael A. Granica alleges that his employer, Defendant Town of Hamburg ("the Town"), discriminated and retaliated against him based on age and disability in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, et seq.

Pending before this Court is the Town's Motion for Summary Judgment.  (Docket No. 27.)  For the reasons discussed below, the motion is granted in part and denied in part.

## II.  BACKGROUND

Granica is 62 years old, having been born on July 14, 1954.  (Defendant's Local Rule 56 Statement of Undisputed Facts ("Defendant's Statement"), Docket No. 27-10, ¶ 1; Plaintiff's Local Rule 56 Statement of Undisputed Facts ("Plaintiff's Statement"), Docket No. 32-2, ¶ 1.[1])  The Town hired Granica on August 12, 1991, as a laborer in the

---

[1]This Court has confirmed and is satisfied that the evidence cited in the parties' Local Rule 56 Statements supports the assertions therein.  Cf. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001) (holding that factual allegations contained in a Rule 56 Statement that find no support in the record evidence must be disregarded and the record reviewed independently).

1

Highway Department.  (Defendant's Statement, ¶¶ 2, 19.)  In 1998, Granica became a maintenance worker in the Town's Building and Grounds Department. (Defendant's Statement, ¶¶ 3, 20.)   Ten years later, in 2008, Granica became a Heavy Equipment Operator in the Building and Grounds Department after a Town employee with more seniority bumped him out of his maintenance worker position.  (Defendant's Statement, ¶¶ 3, 23; Deposition of Michael Granica ("Granica Dep."), Miller Decl., Exh. 30, pp. 67-68.)  He held this position until April 8, 2013, the date of his termination.  (Defendant's Statement, ¶ 3.)

## A.    Collective Bargaining Agreement Provisions

Granica was a member of CSEA Local 100 AFSCME, AFL-CIO ("the Union"), while employed by the Town.  (Defendant's Statement, ¶ 15; Affidavit of Thomas Best, Sr. ("Best Aff."), Docket No. 27-5, ¶ 7.)  Granica's position as a Heavy Equipment Operator was governed by the Collective Bargaining Agreement ("CBA").  (Best Aff., ¶ 7.)

According to the Job Bid for Heavy Equipment Operator, the successful candidate must operate "one or more of specialized heavy equipment and perform[] a variety of operations with related work as required."  (Best Aff., Exh. B.)   The distinguishing features and examples of duties for a Heavy Equipment Operator are as follows:

> The work in this class involves responsibility for the effective operations [sic] of specialized heavy equipment used on construction projects.  Greater skill is required than in the operation of other types of equipment and there is a greater responsibility for the safety of others.  Supervision is received from Working Crew Chief or other designated superior who assigns tasks and inspects the work in

2

> progress and upon completion.    Supervision of other
> employees may be exercised in the performance of their
> assigned tasks.    When not performing duties of Heavy
> Equipment Operator, may be assigned duties of other
> classifications.
>
> Operates one or more of the following:  Hylift (2 yards and
> up); Bulldozers; Dump Truck over 18,000 lb.; Dump Truck
> with 2 or more rear axles; Sewer Jet, backhoe when used for
> excavating.    Performs minor adjustments and repairs on
> assigned equipment;  cleans  and  services  assigned
> equipment; and performs manual tasks in connection with
> the operations.

(Best Aff., Exh. B.)

The CBA governs the assignment of different classifications of work.   With respect to employees assigned a higher classification of work, the CBA provides that "employees required to perform work in a higher classification shall be selected by the Superintendent at his discretion."   (Best Aff., ¶ 8 and Exh. A.)   With respect to employees assigned a lower classification of work, the CBA provides that "if any employee in a higher rated classification is assigned to work in a lower rated classification, wherever practicable, the least senior employee in the affected higher rated classification shall be reassigned first."   (Best Aff., ¶ 9 and Exh. A.)

As for promotions, the CBA states, in pertinent part, that "the applicant who has the skill, ability, experience, and physical capacity to perform the work in question shall be given the promotion and assigned the rate of pay identified with such job title, but if these factors are relatively equal, seniority shall be the determining factor."   (Best Aff., ¶ 10 and Exh. A.)   Concerning the availability of light duty, the CBA provides that "the Highway Superintendent and an individual to be designated by the Union shall

3

administer all requests for light duty, which shall only be granted if both the Highway Superintendent and the Union designee approve such request.  No employee may remain on light duty for a period in excess of three (3) consecutive months."  (Best Aff., ¶ 11 and Exhibit A.)

**B.    Granica's 2009 Injury**

On October 7, 2009, Granica injured himself at work either lifting drywall or moving steel doors.  (Defendant's Statement, ¶ 29; Granica Dep., p. 140.)  He had neck surgery (cervical fusion of C6-C7) on February 18, 2010.  (Declaration of Charles L. Miller, II, Esq. ("Miller Decl."), Docket No. 32-1, Exh. 8; Granica Dep., p. 137.)  He thereafter remained on workers' compensation leave for nearly one year.  (Defendant's Statement, ¶ 29; Granica Dep., p. 137.)

During this time, Granica applied to use the "sick bank," but Tom Best, the Highway Superintendent, denied his request, while allegedly allowing other younger individuals to use the "sick bank" during their disability-related absences.[2]  (Affidavit of Michael Granica ("Granica Aff."), Docket No. 32-13, Miller Decl., Exh. 35, ¶ 9; Best Aff., ¶ 1.)  Best insists, however, that the denial of Granica's sick-bank request had nothing to do with his age.  (Best Aff., ¶ 36.)  Instead, he states that the sick-bank committee, consisting of himself and the union president, denied the request because Granica's absence was covered by workers' compensation, Granica had not contributed to the sick bank, and Granica had not provided medical substantiation in support of his request.  (Best Aff., ¶ 38.)

---

[2]The "sick bank" consists of employee-donated hours that eligible employees can access to cover prolonged absences due to injury or illness.  (Best Aff., ¶¶ 36-39.)

4

On September 1, 2010, Granica underwent a Functional Capacity Evaluation by Janet M. Craft, OTR.  (Miller Decl., Exhibit 8.)  That evaluation yielded, among others, the following results: (1) that Granica could perform only light physical demand level work; (2) that Granica should be referred for a work-conditioning program to assist him in regaining the ability to safely meet the physical demand levels required of a Heavy Motor Equipment Operator with the Town; and (3) that Granica's work-conditioning program focus on improving his overall strength and endurance, as well as education in proper stretching for improved flexibility, education in compensatory techniques, and appropriate use of ice to decrease pain levels.  (Miller Decl., Exhibit 8.)

On September 28, 2010, Stuart Dorfman, M.D., examined Granica to determine his ability to return to work as a Heavy Equipment Operator.  (Best Aff., Exh. U.)  Dorfman first noted that Granica did not participate in the work-conditioning program that Craft recommended in the previous Functional Capacity Evaluation, but rather, sought to increase his strength through physical therapy.  (Best Aff., Exh. U.)  After physically examining Granica, consulting with his physical therapist, and reviewing his records, Dorfman concluded that Granica could return to his regular job for the Town. (Best Aff., Exh. U.)  He noted that Granica would always be at risk of neck injuries because of his history of neck surgeries, but opined that this risk could be reduced by Granica participating in a work-hardening program.  (Best Aff., Exh. U.)  Granica contends that he attempted to participate in such a program but could not do so because Best refused to release him during work hours and no such programs were

available in the evenings.  (Defendant's Statement, ¶¶ 30, 31; Plaintiff's Statement, ¶ 30; Granica Dep., p. 200.)

**C.    Granica's Return to Work and Complaint Against Best**

On September 30 or October 1, 2010, Granica returned to his position and pay as a Heavy Equipment Operator.  (Defendant's Statement, ¶¶ 29, 33; Granica Aff., ¶ 11.)  In his deposition, Granica explained that although he was a Heavy Equipment Operator, he had been receiving a higher rate of pay comparable to maintenance worker pay.  (Granica Dep., p. 64.)  This was a save-pay measure after Granica and several other workers were involuntarily laid off from their higher-paying positions in the since disbanded Sanitation Department.  (Granica Dep., pp. 64, 68.)

Upon his return, Granica immediately met with Best and requested that he be assigned to a maintenance worker position in the Town Park, a position that was already filled.  (Defendant's Statement, ¶¶ 5, 34; Best Aff., ¶ 24.)  Granica maintains that he attempted to exercise his right of first recall, but Best denied the request; the Town maintains that the right of first recall did not apply.  (Defendant's Statement, ¶¶ 34, 35; Plaintiff's Statement, ¶¶ 34, 35.)  Best indicated that he denied Granica's request because the employee already in the position had been there for more than one year and was performing his duties very well.  (Best Aff., ¶ 24.)

Granica spoke out publicly against Best's refusal to assign him to the maintenance worker position.  (Miller Decl., Exh. 10.)  He complained at a Hamburg Town Board Meeting that Best had hired his own son-in-law, Michael Bennett, for the maintenance worker position, rather than post it as a vacancy.  (Miller Decl., Exh. 10.)

Best responded that Bennett had been trained for the maintenance worker position, and he reportedly noted that he did not believe in seniority-based hiring, but rather, in promotion by qualifications.  (Miller Decl., Exh. 10.)

Granica maintains that after his meeting with Best wherein he requested a maintenance position, Best directly began giving his supervisor, the Working Crew Chief, Granica's assignments for the day.  (Granica Dep., pp. 77-80.)  According to Granica, Working Crew Chiefs ordinarily doled out daily work assignments, but in his case, the work assignments came directly from Best.  (Granica Dep., pp. 77-80.)  Best disputes this, and maintains that all employee assignments, including Granica's, came from supervisors, not him.  (Defendant's Statement, ¶ 27; Best Aff., ¶¶ 6, 32.)

Granica alleges that Best knew about his physical limitations and need for accommodation but nonetheless assigned him work Best knew he could not do. (Granica Dep., pp. 80-81.)  For example, Granica claims that Best assigned him tasks including moving benches, landscaping, lifting cement blocks, and moving and lifting picnic tables and trash cans.  (Granica Aff., ¶ 13.)  Granica was made to do this work while Heavy Equipment Operator tasks were assigned to younger employees.  (Granica Aff., ¶ 14.)  For example, Chris Sortisio, who was the other Heavy Equipment Operator, was younger than Granica and regularly assigned to operate the Hylift, while Granica was assigned to manually shovel snow.  (Granica Aff., ¶ 16.)

Best maintains that both Granica and Sortisio received the same pay, performed similar services, and performed work of other classifications (such as labor) when not performing Heavy Equipment Operator work.  (Defendant's Statement, ¶¶ 24, 26; Best

Aff., ¶ 28.)  He attests that there generally was not enough Heavy Equipment Operator work to keep both Granica and Sortisio busy full-time, an assertion that Granica disputes.  (Defendant's Statement, ¶ 25; Plaintiff's Statement, ¶ 25.)  Best further maintains that because Sortisio was regarded as a more skilled heavy equipment operator than Granica, Sortisio generally received more Heavy Equipment Operator assignments.  (Best Aff., ¶ 33.)

Granica, in fact, had a history of performance issues over the course of his employment relating to his operation of heavy equipment, including (1) damaging a chipper by jackknifing the tailgate of a truck into it, (2) causing a piece of equipment to fall off a lift while using a forklift, (3) knocking down wires with a Hylift, (4) causing a Hylift to get stuck in Lake Erie while removing docks, (5) knocking down a light standard while plowing snow, and (6) tearing out bushes, pulling down power lines, and knocking over a light while plowing snow.  (Defendant's Statement, ¶ 54; Best Aff., ¶ 34.) Granica disputes some of these facts and denies that these incidents constitute "performance issues" or were any more serious in nature than similar incidents by other employees that went undisciplined.  (Plaintiff's Statement, ¶¶ 54, 55.)

On November 18, 2010, Granica filed an internal complaint with the Town's Human Resources Department, alleging that Best had discriminated against him based on his age and disability status, citing Best's refusal to recognize his right of first recall and 32 incidents of alleged preferential treatment and favorable treatment of younger workers in daily work assignments.  (Defendant's Statement, ¶¶ 37, 38, 39; Plaintiff's Statement, ¶ 37; Miller Decl., Exh. 11.)

Granica also complained that he was denied access to certain buildings, which prevented him from working within the maintenance classification, and that warnings had been disseminated that any crew that he was on should be "watched." (Defendant's Statement, ¶ 40; Miller Decl., Exh. 11.)  He also complained that "[s]ince I have been back[,] daily job assignments in my current HEO classification are not given out by seniority as it used to be . . . The junior HEO gets the equipment; I get the lifting of heavy material jobs in lower classification work . . . Even non HEO's get HEO jobs before me."  (Miller Decl., Exh. 11.)   Granica also alleged that Best was retaliating against him for speaking out at the Hamburg Town Board meeting.  (Miller Decl., Exh. 11.)  Finally, Granica asserted that Best made the following statement to him in Best's office while he was off on workers' compensation leave in June or July 2010:  "I have to get rid of you old disabled fucks and hire some young healthy people who can actually do some work."  (Miller Decl., Exh. 11; Granica Dep., p. 108; Granica Aff., ¶ 8.)

Best categorically denies any animus toward age.  (Best Aff., ¶ 45.)  He contends that there is no merit to Granica's complaint and that he properly assigned work within his discretion under the CBA, which permits him to assign out-of-classification work without regard to seniority if that is most practicable.  (Best Aff., ¶ 45.)  Best denies that he ever made the comment Granica attributes to him concerning hiring young workers in place of older disabled workers.[3]  (Best Aff., ¶ 46.)

The Town's human resources consultants investigated Granica's internal complaint.  (Defendant's Statement, ¶ 41.)  As part of the investigation, the consultants

---

[3]Best admits that he once stated "out with the old and in with the new," but that was in the non-discriminatory context of a son replacing his retired father on the Town workforce and had nothing to do with Granica.  (Best Aff., ¶ 47.)

met with Granica and his attorney and reviewed the 32 incidents that Granica referenced.  (Defendant's Statement, ¶ 42.)   Before the complaint was resolved, however, Granica filed a charge of discrimination with the New York State Division of Human Rights on January 5, 2011.  (Defendant's Statement, ¶ 43; Granica Dep., p. 220; Granica Aff., ¶ 18.)

**D.    Granica's Assignment to the Nike Base**

At some point after Granica filed his charge with the New York State Division of Human Rights, in January or February 2011, Best assigned Granica to work at the Nike Base, which is a sports park with baseball diamonds, lacrosse and soccer fields, and an ice rink.  (Defendant's Statement, ¶¶ 44, 45; Granica Dep., pp. 135, 144; Granica Aff., ¶ 20.)  He did so after Rick Nowak, the foreman at the Nike Base, requested additional employees.  (Defendant's Statement, ¶¶ 6, 44; Affidavit of Rick Nowak ("Nowak Aff."), Docket No. 27-9, ¶ 4.)  According to Best, he thought an assignment to the Nike Base would be a good fit for Granica, because most of the work there was light cleaning and maintenance of the arena and athletic fields.  (Defendant's Statement, ¶ 45; Nowak Aff., ¶ 5.)  Best therefore assigned Granica to the Nike Base and Rick Nowak became his immediate supervisor.  (Defendant's Statement, ¶¶ 6, 45.)

Nowak maintains that he was aware of Granica's physical limitations and that he told Granica not to perform any work that he could not physically handle or to ask for assistance from other employees.  (Defendant's Statement, ¶ 47; Nowak Aff., ¶¶ 5, 8, 9, 10, 11.)  Patrick Sullivan, a union officer and Granica's co-worker, also indicated that Nowak warned Granica about staying within his limitations and directed him to ask for

help, including help from Sullivan, to complete his tasks, if necessary.  (Deposition of Patrick Sullivan ("Sullivan Dep."), Miller Decl., Exhibit 31, p. 69.)  Granica acknowledges that Nowak was aware of his limitations, but denies that Nowak ever told him not to perform work he was not able to do or to seek assistance.  (Plaintiff's Statement, ¶ 47.)  Nowak maintains that he assigned Granica mowing and maintenance tasks, as well as sweeping and mopping jobs.  (Defendant's Statement, ¶¶ 48, 49; Nowak Aff., ¶ 10.)

Granica contends that a meeting was held on February 24, 2011, at which union representatives instructed Best to assign Granica work that complied with the restrictions set forth in Granica's September 2010 Functional Capacity Evaluation.  (Granica Aff., ¶ 19.)   Sullivan was also at the meeting and recalled that Granica's restrictions and limitations were discussed.   (Sullivan Dep., p. 42.)   Nonetheless, according to Granica, Best continued to assign him laboring work, such as cutting grass, mopping floors, lifting landscape blocks, weed whacking, and lifting and emptying 55-gallon garbage cans.  (Granica Dep., p. 159.)  Sullivan, for one, thought that these assignments violated Granica's work limitations.  (Sullivan Dep., pp. 43, 45.)

Granica maintains that Best knew the restrictions set forth in his Functional Capacity Evaluation, yet nonetheless assigned him to the Nike Base to do laboring work as punishment for filing his charge of discrimination.   (Plaintiff's Statement, ¶ 45; Granica Dep., p. 135; Granica Aff., ¶ 20.)  Sullivan also viewed Granica's transfer as punishment considering that there is really no Heavy Equipment Operator work at the Nike Base.  (Sullivan Dep., pp. 38, 63-64.)  While doing labor work, in particular carrying and emptying mop buckets, Granica hurt his lower back and was out of work for two

weeks.  (Defendant's Statement, ¶ 51; Granica Dep., pp. 157-58; Granica Aff., ¶ 21; Nowak Aff., ¶ 12.)  Nowak maintains that he told Granica not to perform such tasks, and, in any event, there was no need for Granica to lift the mop buckets because there was a floor drain that they could be tipped into.  (Nowak Aff., ¶ 13.)

Granica asserts that while he was out on workers' compensation leave for this injury, Best instructed him to get another Functional Capacity Evaluation.  (Defendant's Statement, ¶ 52; Granica Dep., p. 158; Granica Aff., ¶ 21.)  In compliance with this directive, Granica underwent a Functional Capacity Evaluation by Mary R. Orrange, OTR, on March 19, 2011.  (Miller Decl., Exhibit 14.)  That evaluation yielded, among others, the following results: (1) that Granica demonstrated physical signs of pain during activities requiring increased forward posturing, neck extension, and back extension, but tolerated the activity safely despite the discomfort; (2) that Granica demonstrated the ability to perform light physical demand level work; (3) that Granica demonstrated the ability to perform light physical demand levels for the positions of heavy equipment operator and light equipment operator, as described in the employer job description; and (4) that Granica could not perform the medium to heavy physical demand level work of a maintenance worker, or laborer, as described in the employer job description. (Miller Decl., Exh. 14.)

The Town was aware that Granica had injuries and restrictions per the Functional Capacity Evaluations that had been performed.  (Deposition of Joseph Collins ("Collins Dep."), Miller Aff., Exh. 32, pp. 12-15.)  The Hamburg Town Board concluded that Granica could still perform the Heavy Equipment Operator position with his restrictions.

(Collins Dep., pp. 12-15, 26, 71.)  The Board agreed that Granica should be "left alone" and not placed in jobs he could not do or assigned jobs outside of his capacities, as set forth in the Functional Capacity Evaluations.  (Collins Dep., pp. 27, 71.)

Upon his return to work on March 14, 2011, Granica was re-assigned from the Nike Base to "the shop" to do Heavy Equipment Operator work.  (Defendant's Statement, ¶ 51; Granica Aff., ¶ 21.)  A meeting was then held on March 30, 2011, during which Best told Granica that he would no longer be given overtime work and that if there was no Heavy Equipment Operator work on a given day, Granica would be sent home without pay.  (Granica Aff., ¶ 23.)  Best further told Granica that if he refused any work assignment he would be fired.  (Granica Aff., ¶ 23.)  Thereafter, it appears that Best assigned Granica a mix of Heavy Equipment Operator and labor work at both "the shop" and the Nike Base.  (Defendant's Statement, ¶ 50; Granica Dep., pp. 189-90; Granica Aff., ¶ 24.)

In April and July 2011, co-worker Ray Pawlowski informed Granica that Best was after him and wanted to fire him.  (Granica Aff., ¶¶ 25, 26.)  In July 2011, younger, junior workers who were not qualified as Heavy Equipment Operators were assigned work that Granica contends he should have been assigned, but instead, he was assigned labor work.  (Granica Aff., ¶¶ 27, 28, 29.)  Sortisio also stated that, at times, non-Heavy Equipment Operators operated heavy equipment while Granica performed labor tasks. (Deposition of Christopher Sortisio ("Sortisio Dep."), Miller Decl., Exh. 33, p. 35.) Sullivan also recalls "junior guys working on the high-lift [sic] down at Woodlawn Beach,

they'd be putting them on it and we were wondering why [Granica] wasn't on it." (Sullivan Dep., p. 57.)

Granica maintains that in a meeting with Best and others in July or August 2011, his union representatives told Best that based on Granica's Functional Capacity Evaluation, Best had to make reasonable accommodations for him and could not assign him laboring work.   (Granica Dep., pp. 178, 182-83.)   Granica alleges that Best responded by stating that "nobody tells him what to do with his people."  (Granica Dep., p. 179.)  When told that he could not send Granica home without pay if there was no Heavy Equipment Operator work for him, Best allegedly said, "Well, you will do what I tell you to do and what you are told.  If you don't, you will be fired."  (Granica Dep., pp. 184, 213.)

During another meeting in August 2011, Granica complained to William Dash, a supervisor, that Best was discriminating against him and that others were being assigned Heavy Equipment Operator work while he was being assigned labor work. (Granica Aff., ¶ 31.)  Dash allegedly responded in an angry, raised voice that Granica should not worry about things that did not concern him.  (Granica Aff., ¶ 31.)  Sullivan heard the argument and recalls Dash telling Granica that management can do whatever it wants.  (Sullivan Dep., p. 58.)   Immediately after this meeting, Best re-assigned Granica to the Nike Base as a laborer.  (Plaintiff's Statement, ¶ 63; Granica Aff., ¶ 31.)

Granica maintains that between July and December 2011, he was assigned numerous heavy lifting labor jobs, including moving benches, lifting cement blocks, landscaping, and snow shoveling, while younger employees were assigned easier jobs

that involved no lifting, such as cutting grass on riding lawnmowers, snow plowing with machinery, and Heavy Equipment Operator work.  (Granica Aff., ¶ 32.)

Granica never made a formal written request for accommodation.  (Granica Dep., p. 191.)  He did, however, repeatedly request to be assigned to tasks within his physical limitations and, in addition, he met with Town Supervisor Walters on September 9, 2011, at which time he requested that Walters speak to Best and direct Best to leave him alone and allow him to do his Heavy Equipment Operator work.  (Granica Dep., pp. 191-92.)

### E.    Granica's Last Day and Termination

Granica's last day at work was December 6 or 9, 2011.  (Defendant's Statement, ¶ 56; Granica Dep., p. 159.)  On that day, he was assigned work in the Nike Base ice arena that involved tasks he could not do, such as bending and lifting.  (Granica Dep., p. 160.)  At the same time, others were doing Heavy Equipment Operator work. (Granica Dep., p. 160.)  Granica left work that day due to stress.  (Granica Dep., p. 164.)  His crisis counselor later sought a 30-day leave-of-absence on his behalf, which the Town granted on December 15, 2011.  (Defendant's Statement, ¶¶ 56, 57.)  Granica grieved this leave-of-absence as unnecessary in light of his receipt of workers' compensation benefits.  (Plaintiff's Statement, ¶¶ 57-60.)  Due to this grievance, the Town took no action on Granica's counselor's request for a second 30-day leave-of-absence on his behalf.  (Defendant's Statement, ¶¶ 59-61.)

In March 2012, Granica's physician, Dr. Pollino determined that Granica is temporary/permanently disabled and cannot work.  (Granica Dep., p. 137.)  Granica has

since collected social security disability and workers' compensation benefits.  (Granica Dep., p. 138.)

On March 6, 2013, the Town notified Granica that he would be terminated on April 8, 2013, under Civil Service Law § 71, due to the finding of permanent disability and/or one cumulative year of absence.  (Defendant's Statement, ¶ 62.)  Granica did not challenge his termination.  (Defendant's Statement, ¶ 64.)

**F.    Granica's Administrative Complaints**

Granica filed a charge with the State Division of Human Rights on January 5, 2011, alleging that the Town had subjected him to differential treatment because of his age and disability.    (Defendant's Statement, ¶¶ 66, 67; Declaration of James Domagalski ("Domagalski Decl."), Docket No. 27-1, Exhibit C.)  He filed an addendum to the charge on October 19, 2011, alleging retaliation.  (Defendant's Statement, ¶¶ 66, 70; Domagalski Decl., Exh. E.)

With respect to his disability, Granica alleged that a co-worker told him that Best was angry that Plaintiff got hurt on "his time" and that Best said he was going to "get rid of you old, disabled fu*cks and hire some young, healthy people who can actually do some work."  (Defendant's Statement, ¶ 67; Domagalski Decl., Exh. C.)  Granica further alleged that the Town purposefully assigned him to labor duties rather than equipment operation "in an effort to cause [him] to reinjure [him]self."  (Defendant's Statement, ¶ 67; Domagalski Decl., Exhibit C.)

With respect to age, Granica alleged that the Town assigned younger employees machine operation while he was assigned "physically demanding ground duties."

(Defendant's Statement, ¶ 68; Domagalski Decl., Exhibit C.)   He further alleged that younger employees were granted sick-bank privileges while his requests were denied. (Defendant's Statement, ¶ 68; Domagalski Decl., Exhibit C.)

With respect to retaliation, Granica alleged in his Addendum that the Town retaliated against him for filing his initial charge and addendum by assigning him to the Nike Base to do laboring work and taking his Heavy Equipment Operator work away and giving it to younger employees.   (Defendant's Statement, ¶ 71, Domagalski Decl., Exhibit E.)

On December 22, 2011, the State Division of Human Rights found that there was no probable cause to believe that the Town unlawfully discriminated against Granica. (Defendant's Statement, ¶ 74; Domagalski Decl., Exh. G.)   It further found that the Town placed both Granica and Sortisio on labor assignments when there was no heavy equipment operator work available and that the denial of Granica's sick-bank request was for a legitimate business reason:   he was covered by workers' compensation. (Defendant's Statement, ¶ 74; Domagalski Decl., Exh. G.)   It further found that, under the CBA, the Town could assign Granica labor duties when Heavy Equipment Operator work was unavailable.   (Domagalski Decl., Exh. G.)[4]

## G.    Granica's Federal Complaint

Granica commenced the instant action on May 7, 2012, alleging four causes of action: (1) unlawful discrimination on the basis of age in violation of the ADEA; (2) unlawful retaliation in violation of the ADEA; (3) unlawful discrimination on the basis of

---

[4] Granica had also filed his charge and addendum with the United States Equal Employment Opportunity Commission.   (Defendant's Statement, ¶ 76; Domagalski Decl., Exh. H.)   The EEOC adopted the New York State Division of Human Rights' determination and dismissed Granica's complaints on February 14, 2012.   (Id.)

disability in violation of the ADA; and (4) unlawful retaliation in violation of the ADA. (Complaint, Docket No. 1, ¶¶ 36-54).

The Town moved for summary judgment on March 31, 2014.  (Docket No. 27.) After completion of briefing on June 13, 2014, this Court reserved decision without oral argument.

## III.  DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion."  Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  "Assessments of credibility and choices between

conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). That is, there must be evidence from which the jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252.

In the context of employment discrimination cases, the United States Court of Appeals for the Second Circuit has instructed district courts to use extra care when deciding whether to grant summary judgment, because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)). But that does not preclude summary judgment in employment discrimination actions: "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, the Second Circuit has noted that "the salutary purposes of summary judgment—avoiding

protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." Id.

## B.     Granica's ADEA Discrimination Claims

Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a).  ADEA claims are analyzed under the familiar three-part burden shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009).

Under this framework, the plaintiff must first establish a prima facie case of age discrimination by showing that (1) he was a member of a protected class (at least 40 years of age at the relevant time); (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances of that adverse employment action give rise to an inference of age discrimination.  See Burger v. New York Inst. of Tech., 94 F.3d 830, 833 (2d Cir. 1996); 29 U.S.C. § 631; cf. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000) (describing the plaintiff's initial burden as minimal).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions which, if believed by the trier of fact, would support a determination that unlawful discrimination was not the but-for cause of the adverse employment action.  See Gross v. FBL Fin. Servs., Inc., 557

U.S. 167, 129 S. Ct. 2343, 2350-2351, 174 L. Ed. 2d 119 (2009) (unlike Title VII actions, a plaintiff bears the burden on an ADEA claim of proving that age was the but-for cause of the challenged action); Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010); cf. Bickerstaff v. Vassar Coll., 196 F.3d 435, 446 (2d Cir. 1999) (noting that the defendant's burden is not a demanding one, as the burden of persuasion always remains with the plaintiff).   If the defendant meets this burden, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture."   Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citations omitted); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

The burden then shifts back to the plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination."   Id.   It is not enough for the plaintiff to produce some evidence of discrimination; rather, to survive a motion for summary judgment, the plaintiff must present both sufficient evidence that the purported non-discriminatory reason was false and evidence that age was the but-for cause of the adverse actions.   See id.

### 1.   Prima Facie Case

There is little dispute, and this Court finds, that the record contains sufficient evidence from which a jury could find that Granica was a member of a protected age class and that he was qualified for his position as Heavy Equipment Operator. (Defendant's Statement, ¶ 1; Miller Decl., Exhs. 8 and 14; Best Aff., Exh. U; Collins Dep., pp. 12-15, 26, 71.)

The Town's argument focuses primarily on the third prong—whether Granica suffered an adverse employment action.  It contends that he did not.  Indeed, Granica does not plainly allege an adverse employment action, nor does he specifically address the Town's argument in his responsive papers.  But viewing the evidence and drawing all inferences in his favor, Granica appears to allege that his assignment to labor work rather than Heavy Equipment Operator work, particularly his assignment to the Nike Base in February 2011, constitutes adverse employment action.  (Complaint, ¶¶ 18, 19, 26, 27, 29.)  He also appears to allege that the denial of his sick-bank request is an adverse employment action.[5]  (Complaint, ¶¶ 21, 22.)

The Second Circuit defines an adverse employment action as a "materially adverse change" in the terms and conditions of an individual's employment.  Sanders v. New York City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004); Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).

> To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

Galabya, 202 F.3d at 640 (quotations, citations, and alterations omitted); see also Sanders, 361 F.3d at 755.  Because each case presents unique circumstances and there is no bright-line rule, "courts must pore over each case to determine whether the

---

[5]To the extent Granica also alleges that having his access to certain buildings denied and being "watched" were adverse employment actions, he is wrong.  (Defendant's Statement, ¶ 40; Miller Decl., Exh. 11.)  These incidents do not constitute adverse employment actions because they do not implicate the material terms and conditions of Granica's employment.  See Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).

challenged employment action reaches the level of 'adverse.'"   Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465 (2d Cir. 1997).   Notably, "'not everything that makes an employee unhappy is an actionable adverse action.'"   Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 284 (S.D.N.Y. 1999) (citing Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)).

Here, there is no evidence that Granica suffered an adverse employment action as defined above.   He was never demoted; his pay was never reduced; he never suffered a material loss of benefits; and his responsibilities were never significantly diminished.   When Granica returned from his injury, he resumed his previous position and previous wage, and even when he was assigned labor tasks instead of Heavy Equipment Operator tasks, Granica earned Heavy Equipment Operator pay. (Defendant's Statement, ¶¶ 29, 33; Granica Aff., ¶ 11; Granica Dep., p. 64, 68.) Likewise, Granica's transfer to the Nike Base, where he concedes he performed both Heavy Equipment Operator and labor tasks, was not an adverse employment action in this context, because Granica suffered no material loss in the terms and conditions of his employment.   His job location simply changed, albeit not to his liking.   See Valentine, 50 F. Supp. 2d at 284.   Even Granica's termination occurred by operation of Section 71 of the Civil Service Law, not by the Town's direct action.   (Defendant's Statement, ¶ 62.)

And to the extent Granica relies on the denial of his sick-bank request as an adverse employment action, that argument fails for three reasons.   First, the Town was not solely responsible for the denial of the request, since a committee made the

decision.  (Best Aff., ¶¶ 36, 38.)  Second, Granica has not refuted the Town's evidence that he was ineligible to use the sick bank.  (Best Aff., ¶ 38.)  And third, Granica suffered no material loss of benefits, because his absence from work was covered by workers' compensation.  (Best Aff., ¶ 38.)

For these reasons, this Court finds that Granica has failed to submit sufficient evidence from which a reasonable factfinder could conclude that he suffered an adverse employment action.  His prima facie case therefore fails on this prong.

## 2.    Legitimate, Non-Discriminatory Reason

But even if Granica successfully established a prima facie case, the Town has set forth legitimate, non-discriminatory reasons for the actions it took.[4]  That is, that Granica's job assignments fell within the description of his Heavy Equipment Operator position and Best's discretion under the CBA.  (Best Aff., Exh. B.)  They also fell in line with Granica's skill level and capabilities, with consideration of his history of performance issues.  (Best Aff., ¶¶ 33, 34.)  For example, Granica's job description specifically allows for the assignment of duties from other job classifications, including labor, if no Heavy Equipment Operator work is available.  (Best Aff., Exh. B.)  Moreover, the CBA provides that work of a lower-rated classification is assigned based solely on seniority only if practicable.  (Best Aff., ¶ 9 and Exh. A.)  And finally, the Town has set forth unrebutted evidence that Granica's sick-bank request was denied for a legitimate reason:  he was ineligible to participate in the sick bank and his absence was covered

---

[4]"Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. [This C]ourt has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff." U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983) (internal quotation marks omitted).

by workers' compensation.  (Best Aff., ¶ 38.)  Thus, the Town has met its burden under the <u>McDonnell Douglas</u> test.

### 3.    Pretext for Intentional Discrimination

Granica must now present sufficient evidence that the Town's legitimate, non-discriminatory reasons are false and that age was the but-for cause of the adverse actions he suffered.  "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."  <u>Weinstock</u>, 224 F.3d at 42.  If, instead, "the plaintiff create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that no discrimination ha[s] occurred," then the defendant is entitled to summary judgment.  <u>Reese v. Sanderson Plumbing Prods. Inc.</u>, 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

Granica fails to carry his burden at this stage.

First, Granica fails to present sufficient evidence that the Town's legitimate, non-discriminatory reasons for its actions are false.  He has not challenged Best's discretion under the CBA or the assertion that part of the Heavy Equipment Operator job includes performing other classifications of work.  Moreover, he has failed to set forth any evidence of a material diminution in the terms and conditions of his employment or any evidence that he was eligible for the sick bank and not covered by workers' compensation.   He has thus failed to prove that the Town's legitimate, non-discriminatory reasons are false.

Second, Granica's assertion that age was the but-for cause of the Town's actions lacks a sufficient evidentiary basis and amounts to nothing more than weak surmise. See Reese, 530 U.S. at 148.  Boiled to its essence, Granica's claim is that younger workers were assigned work or granted sick-bank benefits that he should have been assigned and granted.  (Granica Aff., ¶¶ 9, 14, 16, 27-29, 32; Miller Decl., Exh. 11.)  But Granica sets forth no evidence from which one could reasonably infer or conclude that the others were assigned this work or received sick-bank benefits in a discriminatory manner *because* they were younger than him.  That is, Granica sets forth no competent evidence that but for his age, he would have been assigned that work or granted similar sick-bank benefits.

The most Granica musters are two statements by Best:  that he does not believe in awarding positions based strictly on seniority and that he once stated "I have to get rid of you old disabled fucks and hire some young healthy people who can actually do some work."  (Miller Decl., Exhs. 10 and 11; Granica Dep., p. 108; Granica Aff., ¶ 8.)  Neither statement, assuming Best made them, is directly connected to any action the Town took against Granica.  See Mesias v. Cravath, Swaine & Moore, LLP, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) ("Remarks may raise an inference of discrimination if there is a nexus between the remarks and an adverse employment decision.").  The statement concerning seniority is not even necessarily age-related, as seniority is measured by time employed, not age.  And the second remark, at best, is a stray remark insufficient to alone maintain a discrimination claim.  See Danzer v. Norden

Sys., 151 F.3d 50, 56 (2d Cir. 1998) ("stray remarks, even if made by a decision maker, do not constitute sufficient evidence [of discrimination]").

Thus, even viewing the evidence and drawing all inferences in Granica's favor, this Court finds insufficient evidence from which a trier of fact could reasonably conclude that any of the Town's employment decisions involving Granica were motivated solely by his age.  The Town is therefore entitled to summary judgment on this claim.

**C.     Granica's ADA Discrimination Claims**

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a); Capobianco v. City of N.Y., 422 F.3d 47, 56 (2d Cir. 2005).  One such form of discrimination is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112 (b)(5)(A).  A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111 (8).  ADA claims are subject to the McDonnell Douglas burden-shifting analysis and the plaintiff need not show an adverse employment action to state a failure-to-accommodate claim.   See McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 96 (2d Cir. 2009).

To make out a prima facie case of disability discrimination arising from a failure to accommodate, a plaintiff must establish each of the following elements:  "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by

the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006) (quoting Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004) (internal quotation marks omitted)).

A reasonable accommodation is one that "enables[s] an individual with a disability who is qualified to perform the essential functions of that position . . . [or] to enjoy equal benefits and privileges of employment." 29 C.F.R. § 1630.2(o)(1)(ii)-(iii). Reasonable accommodations may include, *inter alia*, "modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, 'reassignment to a vacant position.'" McBride, 583 F.3d at 97 (quoting 42 U.S.C. § 12111 (9)(B)).

The plaintiff "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow him to perform the essential functions of his employment." McMillan v. City of New York, 711 F.3d 120, 126 (2d Cir. 2013) (internal quotation marks, citations, and alterations omitted). The defendant then bears the burden of persuasion that the accommodation "would present undue hardships and would therefore be unreasonable." Id. at 128. An "undue hardship" is "an action requiring significant difficulty or expense." 42 U.S.C. § 12111 (10)(A).

The Town's argument in favor of summary judgment focuses solely on whether Granica can make out a prima facie case. It maintains that he cannot. First, the Town argues that Granica is not a "qualified individual" under the ADA because he could not

28

perform the essential functions of the Heavy Equipment Operator position, particularly working in other classifications, which the Town insists is an essential function of the Heavy Equipment Operator position.  The "essential functions" of a position are the "fundamental job duties of the employment position the individual with a disability holds or desires."  29 C.F.R. § 1630.2 (n)(1).  The relevant factors to consider in determining the "essential functions" of a position include, but are not limited to, the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, and the work experience of employees performing the position or similar positions.  See Stone v. City of Mt. Vernon, 118 F.3d 92, 97 (2d Cir. 1997) (citing 29 C.F.R. § 1630.2 (n)).

Here, viewing all evidence and drawing all inferences in Granica's favor, the fundamental duties of the Heavy Equipment Operator appear to be operating heavy equipment.  The examples of specific duties set forth in the Job Bid include operating Hylifts, bulldozers, dump trucks, sewer jets, and backhoes. (Best Aff., Exh. B.)  It is only if such fundamental duties are not needed that the position calls for working in other classifications.  (Best Aff., Exh. B.)  In any event, there are multiple disputed issues of material fact concerning Granica's ability to perform both Heavy Equipment Operator and labor work, and the availability of such work, such that summary judgment would be inappropriate.  Thus, for purposes of this motion, this Court finds that Granica has presented sufficient evidence from which a jury could find that he could perform the essential functions of Heavy Equipment Operator and that he was therefore qualified for

his position.  See 29 C.F.R. § 1630.2 (n)(1) ("The term 'essential functions' does not include the marginal functions of the position.")

The Town next argues that it had no notice of Granica's disability and that Granica never requested an accommodation.  "[G]enerally, 'it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.'" Graves, 457 F.3d at 184 (quoting 29 C.F.R. pt. 1630, app. at 363 (2003)).  But this general rule does not apply where "the disability is obvious" such that "the employer knew or reasonably should have known that the employee was disabled."  Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008).  In such cases, "the ADA contemplates that employers will engage in 'an interactive process [with their employees and in that way] to work together to assess whether an employee's disability can be reasonably accommodated.'"  Brady, 531 F.3d at 135 (citing Jackan v. N.Y. State Dep't of Labor, 205 F.3d 562, 566 (2d Cir. 2000).

As set forth above, the record is replete with evidence that the Town knew about Granica's physical limitations and that Granica repeatedly requested work assignments consistent with those limitations.  For example, the Town knew that Granica had multiple Functional Capacity Evaluations, knew that Granica could not perform certain heavy labor work, and knew that some accommodations were necessary.  (Granica Dep., pp. 80-81, 135, 178, 182-83, 91-92; Nowak Aff., ¶ 5; Granica Aff., ¶¶ 19, 20; Collins Dep., pp. 27, 71.)  Best, Nowak, Sullivan, and Collins all testified to the Town's knowledge of Granica's physical condition and his need and desire for accommodation. (Nowak Aff., ¶¶ 5, 8, 9-11; Defendant's Statement, ¶ 47; Sullivan Dep., pp. 43, 45;

Collins Dep., pp. 12-15.)   There are multiple references in the record to Granica specifically requesting accommodation both in job tasks and equipment to be used to complete those tasks, such as using specific pieces of machinery that did not aggravate his neck and back.  Further, there are material issues of fact concerning the frequency with which Heavy Equipment Operator work was available and whether Granica was assigned Heavy Equipment Operator work over non-Heavy Equipment Operators. (Defendant's Statement, ¶ 25; Plaintiff's Statement, ¶ 25; Granica Aff., ¶¶ 27-29, 31.) Consequently, this Court finds that there is sufficient evidence from which a jury could conclude that the Town knew about or should reasonably have known about Granica's disability and requests for accommodation.

Accordingly, Granica has set forth a prima facie case of failure to accommodate under the ADA.  Aside from attacking Granica's prima facie case, the Town does not meaningfully argue that Granica's requests were unreasonable or would cause undue hardships, other than to cast Granica's requests for accommodation as essentially requests to perform only Heavy Equipment Operator work, which the Town views as an unreasonable accommodation.  But viewing the evidence in Granica's favor, this was not his request.  Evidence in the record sufficiently supports Granica's contention that he was merely asking to be assigned tasks that fell within the limits of his Functional Capacity Evaluations, whether they be labor tasks or Heavy Equipment Operator tasks. And there is a significant amount of evidence from multiple witnesses that the Town, through Best, assigned Granica work that it knew he could not do and that conflicted with his physical limitations.  (Granica Dep., pp. 80-81, 178, 182-83, 191-92; Granica

Aff., ¶ 19; Sullivan Decl., pp. 42, 43, 45; Collins Dep., pp. 27, 71.)   A reasonable factfinder could thus find that the Town refused to accommodate Granica's request for reasonable accommodations.  Summary judgment on this claim is therefore precluded.

## D.    Retaliation Under the ADEA and ADA

Both the ADEA and ADA make it unlawful for an employer to discriminate or retaliate against an individual on the basis that such individual opposed any practice made unlawful by the respective statutes or filed a charge, testified, assisted, or participated in the investigation of discriminatory practices.  See 29 U.S.C. § 623 (d) (ADEA); 42 U.S.C. § 12203 (a) (ADA).

As with the discrimination claims above, Granica's retaliation claims under the ADEA and ADA are analyzed using the McDonnell Douglas framework.  See Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003) (ADEA); Reyes v. Krasdale Foods, Inc., 945 F. Supp. 2d 486, 493 (S.D.N.Y. 2013) (ADA).   First, Granica must establish a prima facie case of retaliation by showing (1) participation in a protected activity under the ADA or ADEA; (2) that [the Town] knew of his protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.  See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (citations omitted); Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006).   For retaliation claims, an adverse employment action is broadly defined as one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."   Hicks v.

Baines, 593 F.3d 159, 165 (2d Cir. 2010); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

If Granica meets this burden, "a presumption of retaliation arises" and the Town must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." Jute, 420 F.3d at 173.  The burden then shifts back to Granica to show that the Town's proffered reason is pretext for retaliation.  See Wu v. Metro-North Commuter R.R. Co., No. 14-CV-7015-LTS-FM, 2016 WL 5793971, at *12 (S.D.N.,Y. Aug. 4, 2016) (citations omitted).  Pretext may be shown "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Id. (citations omitted).

Here, it is undisputed that Granica filed a charge with state and federal authorities alleging the Town's violations of the ADEA and ADA and that the Town knew that Granica had filed such a charge.  (Defendant's Statement, ¶ 43.)  It is further undisputed that Best transferred Granica to the Nike Base, a less desirable work location than "the shop," very shortly after Granica filed his charge.  (Defendant's Statement, ¶¶ 44, 45; Granica Dep., pp. 135, 144; Granica Dep., ¶ 20.)  Several months later, after Granica had since been removed from Nike Base, Best again assigned him there, this time immediately after Granica had complained about him to William Dash, further suggesting that Best used assignment to the Nike Base as a means to retaliate against Granica.  (Plaintiff's Statement, ¶ 63; Granica Aff., ¶ 31.)

There is also evidence that fellow employees viewed Granica's transfer as punishment. (Sullivan Dep., pp. 38, 63-64.) And Granica was flat-out told after he filed his charge of discrimination that Best was "after him" and wanted to fire him. (Granica Aff., ¶¶ 25, 26.) Consistent with that sentiment, there is also evidence that the Town Board viewed Granica as needing to be "left alone" and that it wanted Best to assign Granica work within his physical limitations, yet Best persisted in refusing to consistently do so. (Collins Dep., pp. 27, 71; Granica Aff., ¶ 19; Sullivan Dep., p 42.)

In this Court's view, this evidence, and the related evidence in the record, sufficiently establishes a prima facie case of retaliation. In particular, Granica's assignments to the Nike Base could reasonably be viewed as adverse employment actions under the broader concept of that term applicable to retaliation claims, and the evidence of record sufficiently supports a causal connection between the filing of the charge of discrimination and the assignment to the Nike Base. Granica has therefore met his initial burden.

Shifting to the Town, it has again set forth legitimate, non-retaliatory reasons for its actions, as set forth above, those being that Granica's job and location assignments fell within the description of his Heavy Equipment Operator position and Best's discretion under the CBA. (Best Aff., Exh. B.) They also fell in line with Granica's skill level and capabilities, with consideration of his history of performance issues. (Best Aff., ¶¶ 33, 34.) And Best has set forth additional non-discriminatory reasons for assigning Granica to the Nike Base, including Nowak's need for additional workers.

(Defendant's Statement, ¶¶ 44, 45; Nowak Aff., ¶¶ 4, 5.)   Thus, the Town has met its burden under the <u>McDonnell Douglas</u> test.

Returning to Granica and his burden of showing pretext, this Court finds that he has submitted sufficient evidence from which a reasonable jury could conclude that the Town's stated reasons for assigning him work and work locations are pretext for retaliation.   Granica's assignments to the Nike Base each closely followed his complaints about Best and it generally appears that Granica's assignment to laboring tasks also increased after his complaints.   There is further other evidence of retaliatory animus by Best in the form of testimony that he was "after" Granica, that Granica needed to be "left alone," and that Best's ultimate aim was to fire Granica.   In this Court's view, a jury crediting this evidence could reasonably find that the Town's proffered reasons for its actions are pretextual explanations intended to hide unlawful motive.   Summary judgment on these claims is therefore precluded.[6]

## IV.  CONCLUSION

Viewing all evidence and drawing all inferences in Granica's favor, this Court finds that the Town is entitled to summary judgment on his discrimination claim under the ADEA, but that his retaliation claims and his failure-to-accommodate claim under the ADA must proceed to trial.   The Town's Motion for Summary Judgment is therefore granted in part and denied in part.

## V.  ORDERS

---

[6]This Court notes that both of Granica's retaliation claims may proceed to trial.  The granting of summary judgment on Granica's discrimination claim under the ADEA does not affect his ability to pursue his retaliation claim under that statute.  <u>See</u> <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002) ("A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.") (internal quotation marks and citation omitted).

IT HEREBY IS ORDERED that Defendant's Motion for Summary Judgment (Docket No. 27) is GRANTED in part and DENIED in part, consistent with this Decision and Order.

FURTHER, that the parties shall contact Mediator Richard F. Griffin (or a different federal mediator upon whom the parties may agree) to schedule a mediation session to occur within 30 days of the entry date of this Decision and Order.

FURTHER, that counsel shall file a Joint Status Report within 60 days of the entry date of this Decision and Order advising this Court as to the status of their mediation efforts.

SO ORDERED.


Dated:  February 17, 2017
          Buffalo, New York

                                                    s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                United States District Judge